UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JASON TSUHLARES | CIVIL ACTION NO. 6:16-CV-00742 |
| VERSUS | JUDGE JOHN W. DEGRAVELLES |
| ADRIATIC MARINE, LLC ET AL | MAGISTRATE JUDGE HANNA |

**MEMORANDUM RULING**

Currently pending is the motion for partial summary judgment (Rec. Doc. 35), which was filed by the defendant, Adriatic Marine, L.L.C. ("Adriatic Marine"), seeking a determination that the plaintiff, Jason Tsuhlares ("Tsuhlares"), is not a seaman for purposes of the Jones Act, such that his claims against Adriatic Marine under the Jones Act, for maintenance and cure, and under the general maritime law for unseaworthiness should be dismissed with prejudice. The motion is unopposed. For the reasons fully explained below, the motion is GRANTED.

**BACKGROUND**

On May 27, 2016, Tsuhlares filed a "Seaman's Complaint for Damages" (the "Complaint") against Adriatic Marine and Bailey's Catering, L.L.C. ("Bailey's"), seeking maintenance and cure and damages under the Jones Act and general maritime law.[1] In the alternative, Tsuhlares has pled entitlement to damages under

---
[1] Rec. Doc. 1. Bailey's was previously dismissed without prejudice, pursuant to

1

33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[2]

Tsuhlares alleges that, on or about May 30, 2015, while aboard the *OSV ARABIAN*, he fell down the wheelhouse stairway, due to the unseaworthiness of the *OSV ARABIAN* and negligence of the defendants, and suffered serious and permanent injuries.[3] At the time of the alleged incident, Tsuhlares was working as a cook, employed by Bailey's, which does not own any vessels, and is typically hired "to provide domestic cooks and services to remote logistic locations . . . in support of offshore oilfield activity."[4] Tsuhlares further alleges that he was the "borrowed servant, joint employee or sub-agent of Adriatic Marine."[5] It is undisputed that, on May 30, 2015, Tsuhlares was working as a third party contract cook, contracted through Bailey's to Adriatic Marine, aboard the *OSV ARABIAN*, which was owned and operated by Adriatic Marine.[6]

Tsuhlares was employed by Bailey's from August 16, 2012, through August 10, 2015, working a total of 487 days.[7] During his employment with Bailey's,

---

Tsuhlares' motion for same. *See* Rec. Docs. 26, 27.
[2] Rec. Doc. 1, p. 1, ¶ 1.
[3] Rec. Doc. 1, pp. 3-5.
[4] Rec. Doc. 1, p. 3, ¶ 7; Rec. Doc. 35-8, p. 1, ¶¶ 1, 2; Rec. Doc. 35-2; Rec. Doc. 35-3, p. 2.
[5] Rec. Doc. 1, p. 3, ¶ 7.
[6] Rec. Doc. 35-1, p. 7 (citing Rec. Docs. 35-2 and 35-3).
[7] Rec. Doc. 35-2, pp. 1, 3.

Tsuhlares was assigned to and worked for thirteen (13) different clients at twenty (20) different locations.[8] In addition to working aboard vessels, 42% of Tsuhlares' days worked with Bailey's were spent aboard fixed platforms.[9] Tsuhlares first worked for Adriatic Marine aboard the *M/V BERRING* for twenty-nine (29) days, beginning on March 11, and ending on April 8, 2015.[10] He then worked aboard the *OSV ARABIAN* for seventeen (17) days, beginning on May 26, and ending on June 11, 2015.[11] He never again worked on an Adriatic Marine vessel. Given that these were the only two Adriatic Marine vessels on which Tsuhlares ever worked, the record indicates that Tsuhlares worked, at most, forty-six (46) days, or approximately 9% of his total employment with Bailey's, aboard Adriatic Marine vessels.[12]

---

[8] Rec. Doc. 35-2. Although Adriatic Marine states that Tsuhlares worked at nineteen unique locations, the Court's review of Tsuhlares' work history table indicates that he worked at twenty unique locations, consisting of: Seahorse, Rig 12B, III, Miss Ginger, MI 703A6, EI 315A, GC 89A, SP 62, SP 75A, Innovation, SA 10A, Rig Monarch, Sea Scout, ST 232A, HI 379B, EB 365A, Berring, Arabian, Manta Ray, and B103. However, this is not a material difference.

[9] Rec. Doc. 35-1, p. 7 (citing Rec. Doc. 35-2, p. 3).

[10] Rec. Doc. 35-1, p. 8; Rec. Doc. 35-8, p. 1, ¶ 5; Rec. Doc. 35-2, p. 3.

[11] Rec. Doc. 35-2, p. 3. Although Adriatic Marine states that Tsuhlares worked aboard the *OSV ARABIAN* for only thirteen (13) days (*see* Rec. Doc. 35-1, p. 8), and same was corroborated by Bailey's representative's deposition testimony (*see* Rec. Doc. 35-3, p. 3), the Court will accept Bailey's work history table, for purposes of the instant motion, which indicates that Tsuhlares was aboard the *OSV ARABIAN* for seventeen (17) days. *But see* Rec. Doc. 35-1, p. 9, n. 29.

[12] Again, as noted in footnote 11, the Court is using the numbers which are most generous to Tsuhlares, given that there is a discrepancy in the record, between Bailey's work history table and Adriatic Marine's assertion of Tsuhlares' days worked.

The instant motion seeks a determination that Tsuhlares is not a seaman. Adriatic Marine maintains that Tsuhlares is not a seaman, and therefore cannot recover under the general maritime law or Jones Act for negligence, maintenance and cure, or unseaworthiness. Rather, it argues that Tsuhlares is a longshoreman, presently receiving benefits under the LHWCA, such that his recovery against Adriatic Marine is limited to the claims afforded under 33 U.S.C. § 905(b), as alternatively pled in the Complaint.

## ANALYSIS

### A. THE SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.[13] A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[14]

---

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).
[14] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson*, 477 U.S. at 252); *Hamilton,* 232 F.3d at 477.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.[15] The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[16] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[17] All facts and inferences are construed in the light most favorable to the nonmoving party.[18]

A motion for summary judgment "cannot be granted simply because there is no opposition."[19] When no response is filed, however, the Court may accept as undisputed the facts set forth in support of the motion and grant summary judgment when a prima facie showing for entitlement to judgment is made.[20]

Further, the Court notes that this case will be tried to the bench. The Fifth Circuit "has determined that a district court has somewhat greater discretion to

---

[15] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).
[16] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp.*, 477 U.S. at 323).
[17] *Washburn*, 504 F.3d at 508.
[18] *Brumfield*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).
[19] *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995); *see also Calais v. Theriot*, 589 F. App'x 310, 311 (5th Cir. 2015) (per curiam).
[20] *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

consider what weight it will accord the evidence in a bench trial than in a jury trial."[21] "[W]here 'the evidentiary facts are not disputed, a court in a nonjury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions.'"[22] To that end, the Fifth Circuit has upheld "the grant of a summary judgment motion requiring the district court to make a factual determination 'in light of all the circumstances surrounding a given transaction.'"[23] "Although, as always, a district court must be aware that assessments of credibility come into sharper focus once live witnesses are heard," the Fifth Circuit has found "that even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[24] With these standards in mind, the Court turns now to the merits of the instant motion.

**B.     THE APPLICABLE LAW**

In *Chandris, Inc. v. Latsis,* 515 U.S. 347 (1995), the Supreme Court established a two-prong test by which to determine whether an employee qualifies as a "seaman" and therefore entitled to the protections of the Jones Act. "First, 'an

---

[21] *Matter of Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).
[22] *Id*. at 398 (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).
[23] *Id*. (quoting *Houston North Hosp. Properties v. Telco Leasing, Inc.*, 680 F.2d 19, 22 (5th Cir. 1982)).
[24] *Id*. (citing *Nunez*, 572 F.2d at 1123-24).

employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.'"[25] "Second, 'a seaman must have a connection to a vessel in navigation[26] (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature.'"[27]

"Because the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the [factfinder]."[28] "Nevertheless, 'summary judgment . . . is mandated where the facts and the law will reasonably support only one conclusion.'"[29] "[W]here undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take

---

[25] *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387 (5th Cir. 2003), as revised (July 24, 2003) (quoting *Chandris*, 515 U.S. at 368) (internal citations and quotation marks omitted)).

[26] The phrase "in navigation" as used in this test is a term of art. The Court in *Chandris* made clear that "[u]nder our precedent and the law prevailing in the Circuits, it is generally accepted that 'a vessel does not cease to be a vessel when she is not voyaging, but is at anchor, berthed, or at dockside[.]'" *Chandris*, 515 U.S. at 373-74 (quoting *DiGiovanni v. Traylor Bros., Inc.*, 959 F.2d 1119, 1121 (1st Cir. 1992) (en banc). Indeed, the Supreme Court later wrote that the phrase "in navigation" was "never [meant] to indicate that a structure's locomotion at any given moment mattered. Rather, the point was that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time." Stewart v. Dutra Const. Co., 543 U.S. 481, 496 (2005) (citations omitted).

[27] *Becker*, 335 F.3d at 387 (quoting *Chandris*, 515 U.S. at 368) (internal citations and quotation marks omitted)).

[28] *In re Endeavor Marine Inc.,* 234 F.3d 287, 290 (5th Cir. 2000) (citing *Harbor Tug and Barge Co., v. Papai*, 520 U.S. 548, 554 (1997)).

[29] *Id*. (citation omitted).

the question from the [factfinder] by granting summary judgment or a directed verdict."[30]

## C. TSUHLARES IS NOT ENTITLED TO SEAMAN STATUS

As stated, *Chandris*'s first prong requires that Tsuhlares' duties contribute to the function of the vessel or to the accomplishment of its mission. "[T]his threshold requirement is very broad: 'All who work at sea[31] in the service of a ship' are eligible for seaman status."[32] For purposes of the instant motion, "Adriatic Marine acknowledges that, as a cook, Tsuhlares may satisfy the first prong of this test: 'A cook clearly contributes to the function of the vessel or to the accomplishment of its mission.'"[33] Thus, the Court finds that the first prong has been satisfied.

---

[30] *Chandris*, 515 U.S. at 371.
[31] The language suggesting that the putative seaman must "work at sea" or be exposed to "perils of the sea" is not to be applied literally. *Naquin v. Elevating Boats, Inc.*, 744 F.3d 927, 934-35 (5th Cir. 2014). For instance, in *Endeavor Marine, supra*, "[d]espite the fact that the crane operator was not literally 'taken to sea' and did not face some of the maritime dangers faced by seamen on moving vessels in the open sea, [the Fifth Circuit] still concluded that he was regularly exposed to the perils of the sea and qualified as a seaman." *Naquin*, 744 F.3d at 935 (citing *Endeavor Marine*, 234 F.3d at 292). The *Naquin* court also stated that "courts have consistently rejected the categorical assertion that workers who spend their time aboard vessels near the shore do not face maritime perils. While these near-shore workers may face fewer risks, they still remain exposed to the perils of a maritime work environment." *Id*. at 934. "Additionally, [the Fifth Circuit has] dozens of cases finding oilfield workers and other 'brown-water' workers on drilling barges and other vessels qualified as seamen even though they spent all their work time on these vessels submerged in quiet inland canals and waterways." *Id*. at 935 (collecting cases).
[32] *Chandris*, 515 U.S. at 368 (quoting *Wilander*, 498 U.S. at 354); *see also Endeavor Marine*, 234 F.3d at 290.
[33] Rec. Doc. 35-1, pp. 12-13 (quoting *Drake v. Danos and Curole Marine Contractors, L.L.C.,* Nos. 04-3522, 05-6657, 2007 WL 781972, at *5 (E.D. La. Mar. 13, 2007)); *see also Hammett v. Sodexo, Inc.,* No. 11-1447, 2012 WL 1237742, at *4 (E.D. La. Apr. 12, 2012).

*Chandris*'s second prong serves to narrow down the broad category of maritime employees who are "doing the ship's work," to those who "are in fact entitled to the benefits conferred upon seamen by the Jones Act because they have the requisite employment-related connection to a vessel in navigation."[34] Again, the second prong requires that the employee have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature. The "fundamental purpose" of the second prong's "substantial connection requirement is to . . . separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[35] An "identifiable group" of vessels is a "finite group of vessels under common ownership or control."[36]

Seaman status "necessarily includes a temporal element."[37] "Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a

---

[34] *Chandris*, 515 U.S. at 369 (quoting *Wilander*, 498 U.S. at 355).
[35] *Chandris*, 515 U.S. at 368.
[36] *Harbor Tug*, 520 U.S. at 560; *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir. 1986) ("By fleet we mean an identifiable group of vessels acting together or under one control.").
[37] *Chandris*, 515 U.S. at 371.

vessel in navigation should not qualify as a seaman under the Jones Act."[38] In the Complaint, Tsuhlares alleged that he "was assigned to and did perform at least thirty (30%) percent of his work as a cook on and aboard a fleet of vessels under common ownership and control including, but not limited to the *OSV ARABIAN*[.]"[39] However, the record plainly does not support this allegation and Tsuhlares has not opposed Adriatic Marine's contrary position. First, it is clear that the Court is to look only at the amount of time Tsuhlares spent working for Adriatic Marine to determine if he satisfies the 30% threshold. "[A] group of vessels is not an 'identifiable group' for purposes of seaman status merely because the employee works on a number of different vessels; rather, the requisite nexus is common ownership or control."[40] Therefore, the inquiry is limited to Tsuhlares' time spent on the *OSV ARABIAN* and the *M/V BERRING*, which accounts for a combined 46 days.

As explained above, Tsuhlares was employed by Bailey's from August 16, 2012, through August 10, 2015, during which time he worked a total of 487 days. Over the course of his employment with Bailey's, Tsuhlares was assigned to various vessels and platforms, typically changing location with each assignment, and never working for longer than one or two hitches per assignment.[41] In *Barrett*, the Fifth

---

[38] *Id.*
[39] Rec. Doc. 1, pp. 3-4, ¶ 9.
[40] *Hammett*, *supra* (citing *Harbor Tug*, 520 U.S. at 557).
[41] Rec. Doc. 35-1, pp. 14-15.

Circuit established that "if the employee's regularly assigned duties require him to divide his time between vessel and land (or platform)[,] his status as a crew member is determined 'in the context of his entire employment' with his current employer."[42] "Since *Barrett*, the Fifth Circuit consistently has analyzed the problem in terms of the percentage of work performed on vessels for the employer in question—and has declined to find seaman status where the employee spent less than 30 percent of his time aboard ship."[43] Given that Tsuhlares only spent approximately 9% of his total employment with Bailey's serving aboard Adriatic Marine vessels, he had "only a transitory or sporadic connection to its vessels" and has failed to satisfy *Chandris*'s second prong.[44]

Since filing its answer, Adriatic Marine has denied Tsuhlares' status as a seaman and maintained that his sole remedy for the alleged incident is pursuant to the LHWCA, 33 U.S.C. § 901 *et seq*.[45] Tsuhlares filed a claim with the Department of Labor, against Bailey's, for LHWCA benefits, which was accepted by Bailey's' compensation insurer, such that Tsuhlares has received LHWCA benefits.[46] "It is well-settled that the Jones Act and the LHWCA are 'mutually exclusive

---

[42] *Barrett,* 781 F.2d at 1075 (citation omitted).
[43] *Chandris*, 515 U.S. at 366 (citing *Barrett, supra*).
[44] *Chandris*, 515 U.S. at 368.
[45] Rec. Doc. 5, pp. 1-2, ¶ 1; p. 6.
[46] Rec. Doc. 35-2, p. 2.

11

compensation regimes.'"[47] Because Tsuhlares does not satisfy the criteria for being a seaman, "he is protected only by the LHWCA."[48] Accordingly, the instant motion is granted.

## CONCLUSION

For the reasons fully explained above, Tsuhlares is not a seaman as a matter of law. Accordingly, Adriatic Marine's motion for summary judgment (Rec. Doc. 35) as to Tsuhlares' claims under the Jones Act, for maintenance and cure, and under the general maritime law for unseaworthiness, is hereby GRANTED and those claims are hereby DISMISSED WITH PREJUDICE.

Signed in Baton Rouge, Louisiana, on August 2, 2018.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[47] *Becker*, 335 F.3d at 386 (quoting *Harbor Tug*, 520 U.S. at 553).
[48] *Id*. (citing *Chandris*, 515 U.S. at 355-58).